UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-7 |
| | ) | |
| DONNIE TAYLOR | ) | |

## **MEMORANDUM OPINION**

This criminal matter is before the Court to address the defendant's objections to the presentence investigation report ("PSR"). The defendant has made a number of objections to the PSR which implicate the advisory guidelines calculations. Specifically, the defendant objects to the application of the following enhancements: (1) two levels if the material involved a prepubescent minor or minor who had not attained the age of 12 years, pursuant to United States Sentencing Guidelines Manual ("USSG") § 2G2.2(b)(2); (2) five levels if the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain, pursuant to USSG § 2G2.2(b)(3)(B); (3) four levels if the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence or (B) sexual abuse or exploitation of an infant or toddler, pursuant to USSG § 2G2.2(b)(4); (4) five levels if the offense involved 600 or more images, pursuant to USSG § 2G2.2(b)(7)(D); and (5) two levels if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct, or a closely related offense, pursuant to USSG § 3C1.1.

  A.  **Procedural and Factual History**

A federal grand jury indicted the defendant in a three-count indictment on January 9, 2018. The defendant entered a valid guilty plea to count one of the indictment on March 22, 2018. Pursuant to that guilty plea, the Court adjudged the defendant guilty of distribution of child pornography, in violation of 18 United States Code § 2252A(a)(2), as charged in the indictment. During the March 22, 2018 change of plea hearing, the defendant admitted the following facts to the Court:

On June 30, 2017, the defendant used his IPhone and Facebook account to distribute three child pornography images to a female friend. Facebook reported the images to the National Center of Missing and Exploited Children and shut down the defendant's account.

On September 28, 2017, a Special Agent with the Department of Homeland security signed into an undercover Kik user account to perform undercover investigations. The agent observed the defendant in the Kik group chat titled "Tabu Moms." Kik is a social media mobile application which allows a user to speak to other users, exchange photos, or participate in group chats.

While in the group chat, the defendant stated to an undercover agent that he had a fantasy about a Mom and daughter. Further, he stated that he liked girls, specifically under 13, with a special like for 9-11. He also stated that he had been with some young children, including his daughter, a prostitute's daughter and his niece.

During the course of the conversation, he asked the agent to trade photos. He then sent two images of prepubescent females engaged in sexual acts. Later that same day, the defendant sent a photo of himself wearing his Emergent Medical Technician uniform with his genitals exposed. He also sent another image of a young girl with her genitals exposed.

On October 19, 2017, the defendant entered into the Kik group "Tabu Moms" and posted "Hello, love to chat with an actively taboo mom." The agent also signed in, recognized the

defendant from the previous September 28, 2017 conversation, and privately spoke to him. He again stated that he had been with his daughter when she was young. He also had an 11-year-old stepdaughter. The defendant wanted to groom her and asked the agent for advice. He sent the agent another image of child pornography.

The defendant remained signed in to another Kik group entitled "young Taboo trade" from October 19 to October 26 of 2017. During that time, the chat group posted a number of videos and images of child pornography. At least one video contained a baby used in a sexual act. Another image depicted a child in bondage and, in another, a foreign object was utilized to conduct a sexual act on a child.

On October 19, 2017, the agent saw the defendant in "young Taboo trade." The defendant posted in the group message "trading?" Another user sent an image of child pornography and the defendant responded "anyone else?" Other users sent other sexually explicit images and videos. On October 22, 2017, the agent observed the defendant in the "young Taboo trade" group chat again. Another user posted in the group a video of child pornography. The defendant responded on the group chat that he loved that child's videos.

On October 24, 2017, the agent saw another user post a request to swap pictures. In response, the defendant posted an image of child pornography.

On October 27, 2017, an officer with Morristown Police Department spoke to the defendant about his Facebook account. The defendant admitted to sending 2 to 5 images that were sexually explicit. He stated that he believed they were legal images of adults.

On November 13, 2017, agents interviewed the defendant and attempted to execute a federal search warrant on the IPhone. The defendant admitted that his phone was destroyed after the interview with the Morristown officers.

The United States Probation Office prepared the PSR and disclosed it to the parties on May 22, 2018. The defendant then filed the instant objections to the PSR, [Doc. 30]. On July 9, 2018, this Court held a sentencing hearing in which both parties were given opportunity to present evidence and oral argument on the issues relating to the defendant's objections. The government provided witnesses and other evidence at the hearing; the defendant did not present any evidence. After the evidence was presented, the Court entertained oral argument on these objections from both parties. Sentencing in this matter was held in abeyance until the objections were fully resolved.

**B. Defendant's Objections to the PSR**

After the publication of the probation officer's findings of the background, character, and conduct of the instant offense in the PSR, the court is permitted to rely upon such facts at sentencing unless there is a "dispute." *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (per curiam) (citing Fed.R.Crim.P. 32(i)(3)). "To create a factual dispute, a defendant 'must produce some evidence that calls the reliability or correctness of the alleged facts into question'-a burden of production that requires 'more than a bare denial.'" *Id*. (quoting *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003)). Thereafter, "[o]nly when a defendant produces '*some evidence*' contradicting the presentence report must a district court, at sentencing, engage in factfinding of its own." *Id*. (quoting *United States v. Adkins*, 729 F.3d 559, 570 (6th Cir. 2013)).

At sentencing, "[t]he government bears the burden to establish enhancement factors, where contested." *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir. 1989). "The preponderance of the evidence standard applies to contested facts in sentencing proceedings." *Id*.

### (1) USSG § 2G2.2(b)(2) - Two-level increase if the material involved a prepubescent minor or a minor who had not attained the age of 12 years.

The defendant objects to the application of the two-level enhancement for the material involving a prepubescent minor or a minor who had not attained the age of 12 years, pursuant to USSG § 2G2.2(b)(2). At the sentencing hearing, the defendant conceded that a review of the material posted in the group chat reveals images and videos of prepubescent minors as well as at least one video involving sexual abuse of a baby. The defendant's only contention here is that there is no evidence showing that he viewed or downloaded any of these images or videos.

Contrary to the defendant's assertions in his objections and at sentencing, he has already admitted to downloading material involving a prepubescent minor or a minor who had not attained the age of 12 years. Indeed, in the factual basis, the defendant admits that

> [t]he defendant remained signed in to another Kik group entitled "young Taboo trade" from October 19 to October 26 of 2017. During that time, the chat group posed a number of videos and images of child pornography. At least one video contained a baby used in a sexual act. Another image depicted a child in bondage and another foreign object was utilized to conduct a sexual act on a child.

Special Agent Michelle Evans, a special agent with the Department of Homeland Security, who investigates offenses involving child pornography, testified at the sentencing hearing about how the Kik application functioned. She testified that Kik is a social media application which users download onto their mobile devices, set up a personal account, and then use to communicate with others, through either one-on-one personal messaging or in group chat settings. Further, she testified that account owners could receive notifications on their mobile device whenever new content is posted, similar to notifications for text messages. Even if the user has disabled notifications, whenever they enter back into the application, everything that has been previously posted in the chat is available for the user to access and view, much like an email inbox with prior

messages. In fact, the posts made by other users in the group chat, including pictures and images of video clips, would be readily displayed to a user when they were within the group chat of the Kik application—meaning that a user was not required to take any additional steps such as opening the individual post or navigating to a separate page to view them because each post was automatically displayed by the application in the chat log.

Finding the Agent's testimony credible and wholly unrebutted, by remaining signed into the group chat over this period of time, the defendant necessarily had to have downloaded this information posted within the group chat on his mobile phone. By owning an account and being logged into the "young Taboo trade" chat group, the material posted by other users was necessarily downloaded by the defendant when he later posted his own messages and images to the chat room. The function of the application allows users access to the previously posted material, and the defendant has admitted that, on a number of occasions between October 19, 2017 and October 26, 2017, he entered the group chat and commented or posted his own content. Therefore, even if the defendant did not actually view the images personally, the evidence shows, by a preponderance, that the enhancement is properly applied because the material he downloaded on his mobile phone, which is involved with the instant offense, "involved a prepubescent minor or a minor who had not attained the age of 12 years." USSG 2G2.2(b)(2).[1]

The issue of whether the defendant actually viewed the images is not as directly evident, but given the above finding, resolution of this issue is likely unnecessary. The Court has been unable to find any case law requiring that the defendant actually view the material he has downloaded and is in possession of for this enhancement to apply; the defendant has not provided

---

[1] This objection could also likely be decided on the basis of defendant's admission that he distributed an image of a prepubescent minor. Because of the nature of defendant's objection, however, the Court has not decided the defendant's objection on this basis.

any such authority. Nevertheless, the Court finds that there is more than sufficient circumstantial evidence to support the finding by a preponderance, that he did, in fact, view the images posted by other users on the "young Taboo trade" group chat.

Here, the defendant has admitted that he remained logged into the group chat for 8 days, and during that time, not only did he make specific requests for others' material, but he also posted his own images of child pornography to the group chat. Further, the Court has personally reviewed the chat log of "young Taboo trade," including the defendant's response to another user's posting of a video of child pornography where the defendant comments that he loved that child's videos—a comment which the Court finds is strong circumstantial evidence that he indeed viewed that child's video. Additionally, the defendant admits that on October 24, 2017, he personally posted an image of child pornography in response to another user's request to swap pictures. Finally, the defendant has not provided any countervailing evidence of his own suggesting that he did not actually view the images posted within the "young Taboo trade" group chat. The defendant did not testify that he did not view the posted material, and he does not argue that he in fact did not view the posted material; rather, he is only asserting that there is no evidence presented by the government showing that he viewed the posted material. This is all to say that the defendant has not presented any countervailing evidence of his own to support a finding—or to even suggest—that he did not view the posted material.

Although the burden clearly lies with the government to show that the enhancement applies, the overwhelming weight of the circumstantial evidence firmly suggests that the defendant logged into this group chat, either continuously or periodically accessed the group chat, requested images and videos of child pornography for his own viewing, posted his own material to contribute to the group's purpose, had complete access to all of the material posted by other users while he

7

was logged in, and responded to specific material posted by others within the group. All of this clearly supports this Court's finding that the defendant in fact viewed the content posted by other users during the time the defendant was logged into the "young Taboo trade" group chat.

The Court's finding that, by a preponderance of the evidence, the defendant viewed the child pornography posted by other users in the "young Taboo trade" group chat further supports this Court's conclusion that the material involved a prepubescent minor or minor who had not attained the age of 12 years.

Therefore, for all of the reasons set out above, the defendant's objection to paragraph 32 of the PSR is **OVERRULED**. The two-level enhancement per USSG § 2G2.2(B)(2) is properly applied.

**(2) USSG § 2G2.2(b)(3)(B) - Five-level increase if the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain.**

The defendant argues that because there is no evidence of any exchange or that the defendant actually saw or downloaded any of the images, the five-level enhancement for distributing child pornography in exchange for valuable consideration is improperly applied. Essentially, the defendant does not contest the facts he admitted to in the factual basis, including that he entered these Kik chat rooms, distributed images of child pornography within the chat rooms, and sent messages requesting material. Rather, he asserts that there was never a direct exchange of his own images for any of the images posted by others. The defendant again relies on the argument that there is no evidence to show that he actually downloaded or viewed any of the videos or images of child pornography posted in the group chat room by other group members. The defendant's arguments on this enhancement are unpersuasive.

Prior to November 1, 2016, the USSG provided for a five-level enhancement "if the offense involved distribution for receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." USSG § 2G2.1(b)(3)(B) (amended 2016). Application of the enhancement became divided across the country as circuits reached different conclusions regarding the mental state required to receive this enhancement, particularly relating to a defendant's use of a peer-to-peer file-sharing program.[2] While most circuits, including the Sixth Circuit,[3] generally agreed that mere use of a file-sharing program or network, without more, was insufficient for application of the enhancement, circuits took different approaches in determining which circumstances required application of the five-level enhancement rather than the two-level distribution enhancement found in USSG §2G2.2(b)(3)(F) (amended 2016).[4]

In an attempt to resolve these discrepancies, effective November 1, 2016, the Sentencing Commission amended § 2G2.2(b)(3)(B) to apply "[i]f the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain." USSG § 2G2.2(b)(3)(B) (Nov. 2016); USSG App. C amend. 801. The amended commentary to the guidelines explains that

> '[t]he defendant distributed in exchange for any valuable consideration' means the defendant agreed to exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child.

---

[2] *See* United States Sentencing Comm'n Guidelines Manual 2016, Supp. to Appendix C, Amend. 801, Reason for Amendment.
[3] *See United States v. Mabee*, 765 F.3d 666, 674 (6th Cir. 2014).
[4] *Compare United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013) (holding that the five-level enhancement applied when "the defendant: 1) knowingly made child pornography in his possession available to others by some means, and 2) made his pornographic materials available for the specific purpose of obtaining something of valuable consideration…."), *with United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (holding that government may meet its burden of proof to apply the five-level enhancement through circumstantial evidence which shows that defendant had technical sophistication in computers to infer the defendant's specific knowledge), *and United States v. Groce*, 784 F.3d 291, 294-95 (5th Cir. 2015) (holding that the knowing use of peer-to-peer file sharing software triggers application of the five-level enhancement).

USSG § 2G2.2 cmt. n. 1 (Nov. 2016). Although prior Sixth Circuit case law considered the circumstances surrounding the defendant's sharing of files in determining whether the five-level enhancement was properly applied,[5] it appears that the use of this type of analysis is no longer appropriate to these cases going forward. Rather, the amendment clarifies that the enhancement only applies "if the defendant distributed in exchange for valuable consideration." USSG § 2G2.2(b)(3)(B) (Nov. 2016). Therefore, this circuit's contrary precedents appear to be superseded by the amendment.

The Court has been unable to find any current case where the Sixth Circuit has analyzed the application of the enhancement as amended. However, the Fifth Circuit has recently addressed the newly amended language, stating that "[t]he new test for applying the enhancement under U.S.S.G. § 2G2.2(b)(3)(B) requires a court to find: (1) the defendant agreed to an exchange with another person, (2) the defendant knowingly distributed child pornography to that person (3) for the purpose of obtaining something of valuable consideration, and (4) the valuable consideration came from that person." *United States v. Halverson*, No. 17-40661, 2018 WL 3621805, at *4 (5th Cir. July 30, 2018). This Court agrees that these elements sufficiently outline the requirements to apply the enhancement, with one caveat. The only hesitation this Court has with these elements regards the final requirement that "(4) the valuable consideration came from that person." *Id*. Although this Court understands that the amendment clarified the mental state required for the enhancement—essentially requiring a *specific purpose* to distribute child pornography with another person in exchange for valuable consideration *from that other person*—to the extent that

---

[5] *See United States v. Mabee*, 765 F.3d 666, 674-75 (6th Cir. 2014) (explaining that circumstantial evidence that defendant possessed no more than 87 distinct child pornography images and videos, did not maintain a "friends list" in the file-sharing program, and did not communicate with other people as to the availability of his files, would not support a finding that defendant had the requisite expectation of receiving something of value by making his files available to apply the five-level enhancement).

10

the elements outlined by the Fifth Circuit require the government to show that the defendant obtained the valuable consideration from such person, this Court disagrees.[6] This Court's reading of *Halverson* requires the government to show that the defendant distributed material to another with the specific purpose to obtain valuable consideration from that other person, and the valuable consideration actually came from that other person.[7] This Court has simply been unable to find any language within the amended enhancement or the commentary which requires the defendant to actually receive some valuable consideration from the person with whom he agreed to exchange. Therefore, this Court will use an amended version of the elements outlined in *Halverson* in determining whether the defendant had the requisite mental state required to apply the USSG § 2G2.2(b)(3)(B) enhancement. The Court concludes that the guideline requires the defendant to agree to distribute child pornography with another person, with the specific purpose of obtaining valuable consideration *from that other person*. Therefore, the elements this Court will apply for determining the proper application of the five-level enhancement are as follows: (1) the defendant agreed to an exchange with another person; (2) the defendant knowingly distributed child pornography to that person; and (3) for the purpose of obtaining something of valuable consideration from that person.[8]

Here, the defendant has admitted that he distributed child pornography in exchange for valuable consideration from another person. In his recitation of facts, the defendant admitted that "[o]n October 24, 2017, the agent saw another user posted a request to swap pictures. The

---

[6] *Cf. Halverson*, 2018 WL 3621805 at*3 (distinguishing the amended language because the "previous commentary did not say that the exchange had to involve a defendant receiving the material from the person with whom he bartered").

[7] The Court does note that a reading of *Halverson's* own application of these elements, *see Halverson*, 2018 WL 3621805, at *4, shows that the Fifth Circuit could have ultimately intended to apply the fourth element to the mental state of the defendant—as this Court finds is the proper application of the amended commentary—however, on its face, the current elements, as written, appear to denote a different meaning.

[8] These elements are a direct recitation of the definition of "distributed in exchange for valuable consideration" found in the USSG commentary.

defendant posted in response an image of child pornography." [Doc. 23 at PageID #: 45]. In essence, the defendant knew that the other user was looking to "swap" pictures in the "young Taboo trade" group chat, and the defendant "posted in response" to the user's request an image of child pornography. This is precisely the type of conduct the enhancement is designed to apply to; the defendant had the specific purpose in posting his image to obtain valuable consideration from the other user—that is to swap his child pornography for the other user's child pornography. The defendant did not provide any evidence to suggest otherwise. The defendant's argument—that there is "no evidence of any exchange and further, there is no evidence to establish if this was a random post by the defendant, or it if was in response to a request"—is necessarily against his own admission and completely disregards the facts he has already admitted. [Doc. 30 at PageID #: 83]. The elements listed above are fully satisfied. Indeed, by posting his own image *in response*, the defendant agreed to the other user's request to "swap," knowingly distributed child pornography to that person, and necessarily had the specific purpose of obtaining child pornography from that person. Additionally, since there is no requirement that the defendant actually receive valuable consideration from the other person, his argument regarding the lack of evidence that he ever viewed or downloaded the material posted by others[9] is inconsequential. It is sufficient, for this enhancement, to find that the defendant had the specific purpose of obtaining valuable consideration from the other person when he distributed his material; it is immaterial whether he actually viewed or even obtained such valuable consideration.

The whole purpose of the Kik group chat "young Taboo trade" was, as is blatantly obvious, to *trade* images and videos of child pornography. This Court's own review of the group chat confirms this finding. The defendant's own admission that he posted an image of child

---

[9] *But see* this Court's findings *supra* Part B.1.

pornography in response to another user's request to swap material satisfies all of the elements to properly apply this enhancement as amended in 2016. Therefore, the defendant's objection to paragraph 33 of the PSR is **OVERRULED**. The five-level enhancement per USSG § 2G2.2(b)(3)(B) is properly applied.

**(3) USSG § 2G2.2(b)(4) – Four-level increase if the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler.**

The defendant objects to the application of the enhancement for the offense involving material that portrays either (1) sadistic or masochistic conduct or other depictions of violence or (2) sexual abuse or exploitation of an infant or toddler. The defendant does not dispute that there are images or videos posted by other users in the "young Taboo trade" group chat which would qualify as this type of material.[10] Rather, the defendant recites his position on his other objections, arguing only that there is no evidence that he ever downloaded or viewed any of these images or videos.

The Court's reasoning and findings in Part B.1 necessarily apply to this objection as well. There is convincing circumstantial evidence, as previously outlined above in this Memorandum Opinion, supporting the Court's finding that the defendant did in fact (1) download the material posted by others in the "young Taboo trade" group chat, as well as (2) view the material posted by others while he was signed into the "young Taboo trade" group chat from October 19, 2017 through October 26, 2017. Understanding that the defendant distributed child pornography by

---

[10] The Court has reviewed portions of the material at issue, and finds that the "young Taboo trade" group chat does in fact contain sadistic or masochistic conduct or other depictions of violence or sexual abuse or exploitation of an infant or toddler as defined in this Circuit. *See generally United States v. Corp*, 668 F.3d 379, 389-90 (6th Cir. 2012); *United States v. Groenendal*, 557 F.3d 419, 426 (6th Cir. 2009) (holding that "penetration of a prepubescent child by an adult male constitutes inherently sadistic conduct that justifies the application of [USSG § 2G2.2(b)(3)); *United States v. Phillips*, 383 F. App'x 527, 532-33 (6th Cir. 2010).

posting his own content as contribution to this group chat, the Court finds by a preponderance of the evidence that the offense involved the material contained in the "young Taboo trade" group chat.

The defendant's objection to paragraph 34 of the PSR is **OVERRULED**. The four-level enhancement per USSG § 2G2.2(b)(4) is properly applied.

### (4) USSG § 2G2.2(b)(7)(D) – Five-level increase if the offense involved 600 or more images.

The defendant objects to the calculation of the number of images for guidelines determination purposes. In essence, the defendant's objection on this point is a recitation of his previous arguments as applied to this enhancement, that is, that there is no evidence showing that the defendant ever viewed, downloaded, or even knew of the material being posted on the "young Taboo trade" group chat. This argument is against the weight of the evidence in this case, and is also unpersuasive.

The Court's reasoning and findings in Part B.1 necessarily apply to this objection as well. The defendant's own admissions in his stipulation of facts show that the offense involved the images and videos contained in the "young Taboo trade" group chat. The defendant does not dispute that the number of images and videos posted by others in the chat exceeds 600 or more images for guidelines purposes. He only argues that he should not be held responsible for the content posted by other users while he was logged in because there is no evidence showing that he downloaded or viewed the child pornography posted by others. This argument has been addressed above[11] and is unpersuasive. The Court finds, by a preponderance of the evidence, that the offense involved 600 or more images as defined by the USSG.

---

[11] *See supra* Part B.1.

The defendant's objection to paragraph 36 of the PSR is **OVERRULED**. The five-level enhancement per USSG § 2G2.2(b)(7)(D) is properly applied.

**(5) USSG § 3C1.1 – Two-level increase for obstruction of justice.**

Lastly, the defendant objects to the application of the two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. The PSR outlines that the defendant was interviewed by the Morristown Police Department and was questioned as to the location of his IPhone. The defendant admitted that his phone was destroyed after the interview with the Morristown Police Department, knowing the phone was central to the investigation.

The defendant argues in his objection that the phone was destroyed by the defendant's fiancé, Ms. Baldy, when she threw the IPhone out of the window of a moving vehicle while traveling over a bridge. The defendant further argues that he did not consent to the destruction of his phone, and had no time to react to Ms. Baldy's actions in destroying the phone. Again, the defendant did not present any evidence on this issue.

At the sentencing hearing, Special Agent Evans testified as to the sequence of events surrounding the destruction of the defendant's IPhone. She testified that in late June of 2017, Facebook alerted the National Center for Missing and Exploited Children ("NCMEC") regarding images sent by the defendant through his Facebook account. NCMEC sent a cyber-tip to Morristown Police Department regarding the distribution and information for them to follow up with for identification and investigation of the individual involved. On October 26, 2017, officers from the Morristown Police Department went to the defendant's last known address, which was the residence of Amanda Rogers. After speaking with Ms. Rogers, the police were unable to locate the defendant, and relayed to Ms. Rogers that they were looking to speak with the defendant regarding some inappropriate images that he had sent to other individuals. On the following day,

October 27, 2017, the defendant voluntarily went to the Morristown Police Department to speak with officers. At that interview, Officer Akard of the Morristown Police Department asked for the defendant's consent to look at his IPhone, which the defendant denied and stated that he had not brought it with him.

In November, Special Agent Evans attempted to execute a search warrant for the IPhone at what was believed to be the defendant's residence. After being unsuccessful in locating the IPhone, law enforcement interviewed the defendant regarding the location of the IPhone. The defendant eventually stated that after he had spoken with Officer Akard in October, Ms. Baldy had destroyed the phone by throwing it out the window of their vehicle while crossing over a bridge.

After receiving this information, Special Agent Evans obtained a search warrant for the IPhone data that could be stored on Apple's ICloud services. After attempting to execute this search warrant, the Special Agent was informed by Apple that on October 27, the same day that the defendant spoke with officer Akard regarding the investigation, the ICloud account, which included the Find My IPhone feature, had been manually turned off for this device, making it impossible to locate the phone through GPS or other means. Special Agent Evans testified that review of the IPhone data was material to the investigation because the defendant had used that specific phone to send pictures of himself at the same time he was distributing child pornography, and based on her training and experience, there were images of child pornography located on the phone. The Agent's testimony was unrebutted.

USSG § 3C1.1 provides that

[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

It is well settled that "[t]he government bears the burden of proving obstruction of justice by a preponderance of the evidence. *United States v. Amerson*, 886 F.3d 568, 578 (6th Cir. 2018) (citing *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002)). The commentary to the guidelines outlines examples of covered conduct which would render this enhancement applicable, and specifically includes

> destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence) . . . .

USSG § 3C1.1 cmt. n.4(D). Additionally, "[d]estroying or concealing evidence sought by a regulatory agency conducting a parallel investigation of the 'instant offense' also qualifies for the adjustment." *United States v. Stauffer*, 695 F. App'x 916, 922 (6th Cir. 2017) (citing *United States v. Vysniauskas*, 593 F. App'x 518, 532 (6th Cir. 2015)).

In the instant case, Special Agent Evans' testimony is credible and unrebutted. Here, there is circumstantial evidence showing that the defendant became aware of an official investigation into the activities he had conducted on his IPhone, and after becoming aware of this investigation, he either (1) destroyed the phone on his own or (2) procured another person (Ms. Baldy) to destroy the phone for him. The close proximity between his initial interview with Morristown Police Department on October 27, 2017, where he was advised that law enforcement believed that this phone was involved in the distribution of child pornography, and the physical destruction of the phone is suggestive of his intent to conceal or destroy material evidence located on the phone. Nevertheless, even assuming the defendant's sequence of events as relayed by Special Agent Evans and argued in his objection—that is that Ms. Baldy grabbed the phone from him and threw it out the window of the vehicle before he could react—the timing of the disabling of the ICloud service, which includes the Find My IPhone feature, is strongly suggestive of the defendant's

intentions to obstruct an official investigation relating to his distribution of child pornography. Indeed, Special Agent Evans testified that the Find My IPhone feature was manually turned off the same day that the defendant learned of the investigation into his distribution of child pornography. This is strongly suggestive circumstantial evidence that the defendant either disabled the feature himself, or directed someone else to do it at his bequest.

In consideration of the unrebutted testimony of Special Agent Evans, the close proximity between the defendant's knowledge of the official investigation into his distribution of child pornography and the physical destruction of the IPhone at issue, as well as the manual disabling of the ICloud data storage of the phone, including the Find My IPhone feature, is, when taken together, sufficient to support an application of the obstruction enhancement. This Court finds by a preponderance of the evidence standard that the defendant, at the very least, willfully attempted to obstruct or impede the administration of justice with respect to the investigation and prosecution of the instant offense of conviction. Further, the Court finds that the defendant's actions in this respect are related to the defendant's offense of conviction and relevant conduct as required by USSG § 3C1.1. Additionally, the Court specifically finds that the evidence on the IPhone in question was material as defined in the commentary to the enhancement. In essence, it is clear that law enforcement was investigating the offense that was the subject of the defendant's criminal prosecution, that almost immediately after the defendant became aware of the investigation there is strong evidence suggesting that he took steps to destroy or conceal the IPhone and the content stored on the phone, and that such content stored on the phone was material evidence relating to the instant offense. Based on the above findings, the defendant's objection to paragraph 39 of the PSR is **OVERRULED**. The two-level enhancement for obstruction of justice per USSG § 3C1.1 is properly applied.

**C. Conclusion**

For the reasons set forth above, the defendant's objections to the application of the enhancements set out in paragraphs 32, 33, 34, 36, and 39 of the PSR are **OVERRULED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
